## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

VINCENT MICHAEL MARINO            :

              Petitioner            :

                  v.            :

WARDEN HOWARD            :

              Respondent            :

CIVIL ACTION NO. 3:20-1501

(JUDGE MANNION)

### MEMORANDUM

Petitioner, Vincent Michael Marino, an inmate confined in the Allenwood Federal Correctional Institution, White Deer, Pennsylvania, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (Doc. 1). Petitioner requests a Court Order, directing "emergency compassionate release" or that he be permitted to serve the remainder of his sentence in home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, §12003(b)(2) (2020). Id. A response (Doc. 21) and traverse (Doc. 22) having been filed, the petition is ripe for disposition. For the reasons set forth below, the Court will dismiss Petitioner's §2241 petition without prejudice for lack of jurisdiction.

## I. **Background**

Section 12003 of the CARES Act gives the Director of the BOP discretion to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under" 18 U.S.C. §3624(c)(2). See CARES Act §12003(b)(2). "Congress codified this section of the CARES Act, in large part, 'to provide BOP a tool by which to alleviate COVID-19 concerns in federal prisons.'" Adams v. Trate, Case No. 1:20-cv-237, 2020 WL 7337806 (Dec. 14, 2020) (quoting United States v. Mathews, 2020 WL 6781946, at *2 (E.D. Pa. Nov. 18, 2020)) (citing CARES Act §12003(a)(2)).

In assessing whether home confinement should be granted, the BOP considers the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and a non-exhaustive list of discretionary factors including the age and vulnerability of the inmate to COVID-19, the security level of the facility currently holding the inmate, the inmate's conduct in prison, the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN"), the inmate's home reentry plan, and the inmate's crime of conviction and assessment of the danger posed by the inmate to the community. (Doc. 9 at 8).

- 2 -

Marino is serving a 420-month sentence imposed in the District of

Massachusetts on April 13, 2000, after a jury convicted him of

> participating in a pattern of racketeering activity in violation of [the
> Racketeer Influenced and Corrupt Organizations statute
> ("RICO")], 18 U.S.C. §1962(c) (substantive RICO violation)
> (Count One); conspiring to participate in a pattern of racketeering
> activity in violation of 18 U.S.C. §1962(d) (RICO conspiracy)
> (Count Two); and conspiring to murder. . . in aid of racketeering
> in violation of 18 U.S.C. §1959 ([the Violent Crimes in Aid of
> Racketeering statute]) (Count Three).

United States v. Marino, 277 F.3d 11, 18 (1st Cir. 2002).

On May 25, 2000, another judge in the District of Massachusetts

sentenced Marino to ten years' imprisonment in case number 1:97-cr-10026,

to run concurrently with the RICO sentence in Case No. 4:97-cr-40009.

On June 2, 2020, Warden Howard denied Marino's request for

compassionate release based on the following:

> This is in response to your June 2, 2020, Inmate Request to Staff,
> wherein you request a Compassionate Release/Reduction in
> Sentence (RIS) due to your medial circumstances. Specifically,
> you claim to be a very high risk for contracting COVID-19.
>
> Title 18 of the United States Code, section 3582(c)(1)(A), allows
> a sentencing court, on motion of the Director of the BOP, to
> reduce a term of imprisonment for extraordinary or compelling
> reasons. BOP Program Statement No. 5050.50, Compassionate
> Release/Reduction in Sentence:  Procedures for Implementation
> of 18 U.S.C. §§3582(c)(1)(A) and 3205(g), provides guidance on
> the types of circumstances that present extraordinary or
> compelling reasons, such as the inmates terminal medical
> condition; debilitated medical condition; status as a "new law"

elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

Your request for Compassionate Release/RIS has been reviewed. Our records indicate you are 59 years old. Although your medical record does not indicate you suffer from a serious or chronic medical condition, you are not completely disabled, you are able to perform activities of self-care and daily living and you are not confined to a bed or chair more than 50% of waking hours. Therefore, you do not meet the criteria established under medical circumstances, in accordance with Program Statement 5050.50, Compassionate Release/RIS.

Based on the above information, your request for Compassionate Release/RIS is denied. If you are not satisfied with this response to your request, you may appeal this decision through the Administrative Remedy Process.

(Doc. 7-7 at 27, Inmate Request to Staff Response).

On July 1, 2020, Warden Howard denied Marino's request for release under the CARES Act as follows:

This is in response to your correspondence to staff received on June 22, 2020, wherein you request to be released to home confinement.

Currently, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") grants discretion to the BOP to place inmates on home confinement for a longer term under 18 U.S.C. §3624(c)(2). The BOP's discretion is guided by criteria listed in memoranda from the Attorney General.

A comprehensive review of your circumstances revealed your current conviction is categorized as a crime of violence. In

- 4 -

addition, you currently maintain a Medium security level with a Medium risk for recidivism. Inmates who have anything above a Minimum score are not receiving priority placement. Likewise, priority placements are given to inmates residing in Low and Minimum security facilities. Therefore, you are not a suitable candidate for home confinement placement.

(Doc. 7-7 at 28, Inmate Request to Staff Response).

On July 2, 2020, the sentencing court considered and denied Marino's request for early compassionate release based upon his concerns for contracting COVID-19 under 28 U.S.C. §3582. United States v. Carrozza, et al., No. 4:97-cr-40009, Doc. Nos. 2463, 2478, 2493. Marino subsequently filed motions with the sentencing court seeking early compassionate release based on newly discovered evidence in the form of medical conditions which place him at risk of becoming seriously ill if he were to contract the COVID-19 virus. Id. at Doc. Nos. 2524, 2526 & 2527. By Order dated May 6, 2021, the sentencing court denied Marino's motions. Id. at 2533.

On March 9, 2021, Marino also filed a request with this Court seeking early compassionate release based on newly discovered evidence in the form of medical conditions which place him at risk of becoming seriously ill if he were to contract COVID-19 virus. (Doc. 19). In response to this motion, Respondent submits the Declaration of Dr. Thomas, who reviewed Marino's medical records, compared them against his alleged chronic illnesses as

- 5 -

detailed in his motion for compassionate release, and found that Marino's medical records revealed the following, in contradiction to his "newly discovered evidence in the form of medical conditions" listed in his motion:

- The BOP offered petitioner the Moderna COVID-19 vaccine. He specifically refused the vaccine on February 20, 2021.

- Regarding paragraph 2 in petitioner's filing: Petitioner does not have emphysema. To the contrary, his pulmonary function testing on January 13, 2021, yielded normal results. He does not have pulmonary hypertension either, based on his normal heart catheterization pressure results on May 15, 2020. Petitioner alleges a "collapsed thyortic esophagus." I am not familiar with this term and have no reason to believe petitioner's esophagus has "collapsed" in any way.

- Regarding paragraph 3: Petitioner's heart disease is stable, based in part on his normal myocardial perfusion scan results on May 3, 2020. His ventricular tachycardia remains stable with medication and petitioner's pacemaker/defibrillator. Petitioner's hypertension and hyperlipidemia are well-controlled.

- Regarding paragraph 4: Petitioner is scheduled for gall bladder removal and a cardiac ablation in the near future. The operations are considered non-emergent by the specialists who will oversee them.

- Regarding paragraph 5: Petitioner's TSH level appeared elevated based on a screening evaluation. More precise thyroid function tests demonstrated normal TSH results.

- Regarding paragraph 6: Here petitioner relays *potential* side effects of his medication. Petitioner's medication is closely regulated, and these potential side effects are monitored by his cardiologists and physician.

(Doc. 21-2 at 3, Declaration of Dr. Thomas Cullen, BOP medical officer).

- 6 -

## II. **Discussion**

Marino challenges the denial of his pre-release placement via 28 U.S.C. §2241. Section 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001).

### A. Request for Home Confinement under the CARES Act

The Court does not have the authority under the CARES Act to grant Marino's request for home confinement. See Cordaro v. Finley, No. 3:10-CR-75, 2020 WL 2084960, at *1, *6- 7 (Apr. 30, 2020).

"Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [18 U.S.C. §3624(c)(2)]" through the CARES Act. Furando v. Ortiz, Civ. Action  No. 20-3739 (RMB), 2020 WL 3264161, at *2 (D.N.J. June 17, 2020) (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." Furando, 2020 WL 1922357, at *2. "Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in

home confinement under the first sentence of 18 U.S.C. §3624(c)(2)."
Cordaro, 2020 WL 2084960, at *7; see also Furando, 2020 WL 1922357, at
*2; United States v. Cruz, 455 F. Supp. 3d 154, 159 (M.D. Pa. 2020). 18
U.S.C. §3621(b) states that "[t]he Bureau of Prisons shall designate the place
of the prisoner's imprisonment." See also Woodall v. Fed. Bureau of Prisons,
432 F.3d 235, 241 (3d Cir. 2005) ("Under 18 U.S.C. §3621(b), the BOP is
vested with authority to determine the location of an inmate's imprisonment").
Additionally, 18 U.S.C. §3624(c)(2) dictates pre-release custody of a
prisoner to home confinement extending the authority "to place a prisoner in
home confinement" to the Bureau of Prisons. See also Cruz, 455 F. Supp.
3d at 159. Therefore, the "determination of which inmates qualify for home
confinement under the CARES Act is with the BOP Director. . . . Thus,
'[c]ourts . . . do not have power to grant relief under Section 12003 of the
CARES Act.'" Cruz, 455 F. Supp. 3d at 159 (quoting United States v. Coker,
2020 WL 1877800, *1 (E.D. Tenn. April 15, 2020)); see also Cordaro, 2020
WL 2084960, at *7; United States v. Read-Forbes, 2020 WL 1888856, at *5
(D. Kan. Apr. 16, 2020); United States v. Engleson, 2020 WL 1821797, at *1
(S.D.N.Y. Apr. 10, 2020); United States v. Hembry, 2020 WL 1821930, at *2
(N.D. Cal. Apr. 10, 2020); United States v. Carter, 2020 WL 1808288, at *2

(S.D. Ind. Apr. 9, 2020); United States v. Garza, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020))).

Here, the Court lacks the power to release Marino on home confinement under the CARES Act. See United States v. Stroman, No. 3:14-CR-270, 2020 WL 4448056, at *5 (M.D. Pa. Aug. 3, 2020) ("[Petitioner's] motion will be dismissed to the extent it is under the CARES Act since the court does not have the authority to grant [Petitioner] relief under the Act"); see also United States v. Banks, No. 2:15-CR-00168, 2020 WL 4820199, at *2 (W.D. Pa. July 30, 2020) ("[A] district court does not have authority under the CARES Act to order the BOP to alter a defendant's location of confinement—that determination remains with the BOP" (internal quotations omitted)). "[S]ince the authority to make this determination lies with the BOP Director and not the court" the Court will dismiss Marino's claims as they seek to challenge the BOP's decision under the CARES Act. See Cordaro, 2020 WL 2084960 at *8.

## C. Request for home confinement under 28 U.S.C. §2241

Although the Court cannot review Marino's challenge to the BOP's decision under the CARES Act, the Court may assess "whether the BOP abused its discretion." Vasquez v. Strada, 684 F.3d 431, 434 (3d Cir. 2012) (citing Barden v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981); Barden v.

- 9 -

Keohane, 921 F.2d 476, 478 (3d Cir. 1990) ("If this designation impacts the fact or duration of a prisoner's sentence, the BOP's decision is subject to judicial review for abuse of discretion"); United States v. Allen, 124 F. App'x. 719, 721 (3d Cir. 2005); Rush v. Shartle, Civ. No. 13-4788 (NLH), 2015 WL 5567307, at *7 (D.N.J. Sep. 22, 2015) (citing Keohane, 921 F.2d at 480-83 ("The decision of the BOP is subject to judicial review only for abuse of discretion").

The Court will review the BOP's decision for abuse of discretion in denying Petitioner's request for home confinement based on Petitioner's history of violence. See Vasquez, 684 F.3d at 434. "The test is not whether a reviewing court would weigh the factors differently. The writ may issue only where an error is fundamental and carries a serious potential for a miscarriage of justice." Eccleston v. United States, 390 F. App'x 62, 65 (3d Cir. 2010). An incorrect determination by the BOP regarding an inmate's "eligibility for early release . . . carries a potential for a miscarriage of justice that can be corrected through habeas corpus." Reeves v. Federal Bureau of Prisons, Civ. No. 13-1795 (JBS), 2014 WL 673019, at *1 (D.N.J. Feb. 21, 2014) (citing Murray v. Carrier, 477 U.S. 478, 495 (1986); Keohane, 921 F.2d at 479).

- 10 -

The Third Circuit has held that the BOP's review of statutory factors and ultimate denial of a Petitioner's appeal is a valid "exercise of discretion." Eccleston, 390 F. App'x at 65; see also Pickett v. Warden McKean FCI, 726 F. App'x 104, 107 (3d Cir. 2018); Wilson v. Strada, 474 F. App'x 46, 48 (3d Cir. 2012). "[T]he CARES Act does not mandate home confinement for any class of inmate." Stroman, 2020 WL 4448056, at *7 (internal quotation omitted). Additionally, "nothing in the Act grants individual prisoners the right to serve the remainder of their sentence in home confinement." Gottstein v. Finley, 3:20-CV-0935, 2020 WL 3078028, at *7 (M.D. Pa. June 10, 2020) (quoting United States v. Soliz, Crim. No. 2:16-190-3, 2020 WL 2500127, at *4 (S.D. Tex. May 14, 2020)).

The record reflects that Petitioner's request for home confinement was denied based on his conviction being categorized as a crime of violence and having a Medium Risk Recidivism level factor. Per the Department of Justice's March 26, 2020 Memorandum ("Memorandum") in affect at the time, regarding home confinement, an inmate's history of violence is a serious consideration in granting home confinement. (Doc. 7-5).

Although Marino may have met other factors within the Memorandum, the BOP determined that he was not a priority candidate for home confinement based on his history of violence. Id. This determination is in

- 11 -

accordance with the Memorandum. Id. see also Washington v. Warden, USP-Canaan, Civ. No. 21-0211, 2021 WL 1123330, at *5 (M.D. Pa. March 24, 2021) (finding that, consistent with the Attorney General's memorandum, Washington, a prisoner with a history of violence, was not a priority candidate for home confinement under the CARES Act"). The BOP's determination evidences that Marino "was considered for [home confinement] placement," accordingly there is "no reason to upset the findings of the BOP [because] . . . it is clear that Petitioner was properly considered, and thus no constitutional violation occurred." See Mennen v. Zickefoose, Civ. Action No. 11-1794 (JBS), 2012 WL 113645, at *3 (D.N.J. Jan. 13, 2012); Senior v. Zickefoose, Civ. Action No. 12-0127 (RBK), 2013 WL 875973, at *3 (D.N.J. Mar. 7, 2013); Roccaforte v. Shartle, Civ. No. 13-5660, 2014 WL 3499999, at *3 (D.N.J. July 14, 2012). Thus, because the BOP "gave [Marino] an individual review" of the factors set forth by the Memorandum expanding 18 U.S.C. §3624(c)(2), the Court finds "no abuse of discretion in the way that the [temporarily revised 18 U.S.C. §3624(c)(2)] factors were balanced."[1]

---

[1] To the extent that Marino was dissatisfied with the Warden's July 1, 2020 denial of his motion for home confinement, his remedy was to file an appeal with the regional director within twenty days from the date of the warden's response. See 28 C.F.R. §542.15. There is no indication in the
*(footnote continued on next page)*

**C. Request for compassionate release under 18 U.S.C.
§3582(c)(1)(A).**

Compassionate release is a procedure that allows a sentencing court
to "reduce [a defendant's] term of imprisonment (and [] impose a term of
probation or supervised release with or without conditions that does not
exceed the unserved portion of the original term of imprisonment)." 18 U.S.C.
§3582(c)(1)(A). However, compassionate release comes before the
sentencing court only

> upon motion of the Director of the [BOP], or upon motion of the
> defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the [BOP] to bring a
> motion on the defendant's behalf or the lapse of 30 days from the
> receipt of such a request by the warden of the defendant's
> facility, whichever is earlier.

Id. The sentencing court in turn can grant the motion "after considering the
factors set forth in [18 U.S.C. §]3553(a) to the extent that they are applicable,
if" there are "(i) extraordinary and compelling reasons warrant[ing] such a

---

record that Marino filed an appeal of the Warden's decision. Thus, it appears
that Petitioner has failed to exhaust his available administrative remedies
prior to filing the instant action. Exhaustion of administrative remedies
requires compliance with an agency's deadlines, other critical procedural
rules, and all steps of the available administrative process. Woodford v. Ngo,
548 U.S. 81, 90-92 (2006); Jones v. Bock, 549 U.S. 199, 218 (2007) (proper
exhaustion defined by applicable prison requirements).

- 13 -

reduction." Id.

> The [§3553(a)] factors include, among other things, "the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[, and] . . . to afford adequate deterrence to criminal conduct."

United States v. Pawlowski, 967 F.3d 327, 330 (3d Cir. 2020) (second alteration in original) (internal citations omitted) (quoting §3553(a)).

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. §3582(c)(1)(A)(i)). Procedurally, a defendant must ask the BOP to make a request on their behalf and allow thirty days for a response. Id. Thereafter, only the sentencing court can consider a motion on appeal. Id. A criminal defendant has properly exhausted his administrative remedies under §3582(c)(1)(A) when he "file[s] the [compassionate release] motion thirty days after the warden receives his request," irrespective of whether the warden responds in those thirty days. United States v. Harris, 812 F. App'x 106, 107 (3d Cir. 2020).

In Marino's case, on June 2, 2020, Warden Howard denied Marino's request for compassionate release. On July 2, 2020, the sentencing court

- 14 -

considered and denied Marino's motion for compassionate release, filed pursuant to 18 U.S.C. §3582. <u>United States v. Carrozza, et al.</u>, No. 4:97-cr-40009, Doc. No. 2478, 2533. Additionally, on May 6, 2021, the sentencing court denied Petitioner's March 29, 2021 motion for a hearing and early compassionate release based on newly discovered evidence in the form of medical conditions which allegedly place him at risk of becoming seriously ill if he were to contract COVID-19 virus. <u>Id</u>. at 2533. Plaintiff's March 29, 2021 motion is identical to his March 9, 2021 emergency motion for a hearing and compassionate release filed in the instant action. Thus, Marino has received all the relief he is entitled to as his motion for compassionate release and motion based on newly discovered medical evidence have been ruled on by the sentencing court. This Court is without jurisdiction to offer Petitioner relief.

## III. **Conclusion**

Based on the foregoing, Marino's petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241, and subsequent motions for immediate compassionate relief and emergency hearings will be dismissed for this Court's lack of jurisdiction over Marino's motion for compassionate release and the BOP's decision with respect to an inmate's release on home

- 15 -

confinement. Additionally, the Court dismisses Marino's action because Petitioner is not a priority candidate at this time under the relevant framework and the BOP has not abused its discretion or otherwise violated the constitution. Finally, because Petitioner is not detained because of a process issued by a state court and the petition is not brought pursuant to §2255, no action by this Court with respect to a certificate of appealability is necessary.

An appropriate Order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated:  September 23, 2021**
20-1501-01

- 16 -